Argued and submitted August 9, 1994; resubmitted In Banc January 10, affirmed
April 19, petition for review denied August 1, 1995 (321 Or 429)

In the Matter of the Compensation of
Victoria Clark, Claimant.

## FIRST INTERSTATE BANK
## OF OREGON,

*Petitioner,*

*v.*

## Victoria CLARK,

*Respondent.*

## (WCB 92-16330; CA A82400)

894 P2d 499

In Banc*

Judicial Review from Workers' Compensation Board.

Deborah L. Sather argued the cause for petitioner. With her on the brief was Stoel Rives Boley Jones & Grey.

G. Duff Bloom argued the cause for respondent. With him on the brief was Coons, Cole and Cary, P.C.

DEITS, J.

* Warren, J., not participating.

### DEITS, J.

Employer seeks review of an order of the Workers' Compensation Board holding that claimant's workers' compensation claim is compensable. We affirm.

The Board adopted the referee's findings.[1] Claimant is a part-time bank teller. Her duties primarily involve serving customers at the teller window and assisting customers with new accounts, incoming wires and interstate drafts. She is expected to market accounts and to encourage customer involvement in employer's Community Reinvestment Act program. As part of her duties, she also is encouraged to participate in two community service projects each year. Before her injury, claimant had received a performance review in which one of her supervisors expressed concern about claimant's ability to meet and maintain sales goals. Employer had recently increased its focus on sales activities in an attempt to improve the branch's unsatisfactory sales record. Regular sales meetings were held, and a weekly sales award system was implemented. Claimant's immediate supervisor, Smith, conducted the sales meetings. In March or April 1992, Smith announced that each employee would be required to perform two community service functions annually. He also informed the employees that compliance would be considered at the time of their employee performance reviews.

On the evening of August 13, 1992, claimant attended an organizational meeting of the Emerald Empire Roundup, a group that was attempting to bring a rodeo to the area. The meeting was not on the bank premises, nor was claimant required to attend the meeting. She went to the meeting to attempt to solicit from the rodeo group a new account for employer and to provide the group with information about the Community Reinvestment Act funds. She also considered her attendance as fulfilling part of her community service goal for the year. After the meeting ended, claimant spoke with the comptroller of the group, who agreed to visit employer the following week to open an account. On her way to her car after the meeting, claimant tripped and fell, fracturing her wrist. She

---

[1] As will be discussed, employer challenges the Board's conclusions of fact that claimant "was not on a personal mission" and that "the employer clearly obtained the greater benefit in the form of potential business from the rodeo group." Other than that, employer does not challenge the Board's findings of fact.

filed a workers' compensation claim, which employer denied on the ground that her injury did not arise out of and was not in the course of her employment. Both the referee and the Board held that the claim was compensable.

■ Employer first assigns error to the Board's findings that "employer clearly obtained the greater benefit [from claimant's attendance at the meeting, compared to any benefit enjoyed by claimant] in the form of potential business from the rodeo group," and that "claimant was not on a personal mission," arguing that they are not supported by substantial evidence. We disagree. Both of those findings are supported by substantial evidence. Claimant testified, and the referee and the Board believed her, that she went to the meeting to solicit business for the bank and to meet her community service obligation. She, in fact, later received a small award for her solicitation efforts. Although the rodeo comptroller did not open an account with employer, he did contact the bank to discuss that possibility. That constitutes substantial evidence to support the Board's finding that employer obtained a benefit in the form of potential business from claimant's activity.

The evidence also supports the Board's finding that claimant was not on a personal mission. Employer's fundamental disagreement with this finding is its view that, because it did not *require* claimant to attend the rodeo meeting or ever sanction the meeting as a community service activity, claimant's attendance was not job-related. However, the Board disbelieved employer's witnesses on this question. It explained:

> "[Regarding employer's management witnesses,] I believe that they focused upon what should have occurred from a management perspective rather than actual practice known to the tellers at the windows, or their perception of management directives. The persuasiveness of the upper management witnesses was diminished by a sense of advocacy and redundancy which suggested repetition of a corporate position which appeared almost rehearsed."

■ The evidence that the Board did believe showed that employees were encouraged to increase their sales and community service activities, and that failure to meet employer's sales and community service requirements would affect employees' performance reviews. Employer also argues that claimant was on a personal mission, because she was seeking to protect her

job. However, the fact that an activity is directed at keeping one's job does not, in itself, make the activity a personal mission. We conclude that the Board's findings were supported by substantial evidence.

Employer next argues that the Board erred as a matter of law in concluding that claimant's injury was compensable. Employer contends that the Board did not consider the "arising out of" element of the unitary work-connection test and that it improperly analyzed the "in the course of" element of the test. ORS 656.005(7)(a).

At the outset, we should discuss the parties' contentions regarding the impact of the Supreme Court's decision in *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994), on the test for work-connection. Claimant argues that *Norpac Foods* was "not intended to help interpret any situations beyond those dealing with the 'parking lot exception' to the 'coming and going rule.' " Employer essentially asserts that the *Norpac Foods* decision, while not substantially changing the unitary work-connection test that has been articulated in previous decisions, now provides the legal framework to be applied in determining the work-connection of an inquiry.

We agree with employer regarding the impact of *Norpac Foods*. Before that decision, both this court and the Board applied the seven-factor "*Mellis* test" to determine whether an injury was sufficiently work-connected to justify compensability. *Mellis v. McEwen, Hanna, Gisvold*, 74 Or App 571, 703 P2d 255, *rev den* 300 Or 249 (1985).[2] In *Norpac Foods*, the Supreme Court re-examined the work-connection standard of

---

[2] The seven factors identified in *Mellis* are:

" 'a. Whether the activity was for the benefit of the employer * * *;

" 'b. Whether the activity was contemplated by the employer and employe either at the time of hiring or later * * *;

" 'c. Whether the activity was an ordinary risk of, and incidental to, the employment * * *;

" 'd. Whether the employee was paid for the activity * * *;

" 'e. Whether the activity was on the employer's premises * * *;

" 'f. Whether the activity was directed by or acquiesed [sic] in by the employer * * *;

" 'g. Whether the employe was on a personal mission of his own * * *.'
*Jordan v. Western Electric*, 1 Or App 441, 443-44, 463 P2d 598 (1970); *see also Halfman v. SAIF*, 49 Or 23, 618 P2d 1294 (1980)." 74 Or App at 574.

ORS 656.005(7)(a) and clarified the proper framework for our analysis. The court emphasized that the unitary work-connection test includes two statutory elements, both of which must be evaluated. One prong of the inquiry is whether the injury occurred in the course of employment. That element concerns the time, place and circumstances of the injury. The second prong, which must also be examined, is whether the injury arose out of the employment; that is, whether a causal connection existed between the injury and the employment. Thus, although this is a unitary approach, "[e]ach element of the inquiry tests the work-connection of the injury in a different manner." 318 Or at 366. As the court explained, neither element is dispositive, and the Board must consider "all the circumstances" to determine if the claimant has shown a sufficient work-connection. 318 Or at 366, 369.

The analytical framework set out in *Norpac Foods* does not significantly change the nature of our inquiry under ORS 656.005(7)(a); it essentially incorporates the tests for work-connection that have been established through case law. However, we believe that reliance on the *Mellis* test, as *the* test of work-connection, is inconsistent with the *Norpac Foods* framework, because the *Mellis* test does not necessarily allow a meaningful consideration of each of the two elements of the inquiry. Strict adherence to the seven-factor test also does not allow consideration of the totality of the circumstances, as required by *Norpac Foods*. Accordingly, we conclude that the factors identified in *Mellis* should no longer be used as an independent and dispositive test of work-connection. Nonetheless, depending on the circumstances, some or all of those factors will remain helpful inquiries under the *Norpac Foods* two-prong analysis.

We now turn to employer's substantive arguments. Employer contends that the Board erred in concluding that claimant's injury occurred "in the course of" her employment. First, it contends that the Board addressed only three of the seven *Mellis* factors and that, in itself, is error. As discussed above, however, the Board need not mechanically apply the *Mellis* factors as a conclusive test of work-connection. Further, a review of the Board's order shows that it did consider factors pertinent to that element of the inquiry:

"In gauging the relative benefit of attending the meeting to claimant and the employer, the employer clearly obtained the greater benefit in the form of potential business from the rodeo group. There is no doubt that the conversation [between claimant and the rodeo comptroller] occurred * * *. Claimant's past actions modeling western apparel or even attending rodeos does not by itself provide sufficient motivation for her to attend the meeting. Considering the circumstances in which claimant acted, it is clear that her primary motivation in attending the meeting was to solicit business on behalf of the bank. She was not on a personal mission.

"Claimant was not paid for attending the meeting. She was, however, rewarded for her solicitation efforts when she was allowed to draw a gift [at a later weekly meeting]. Regardless of the negligible value of what she received, that recognition was not an act of discouragement, but one of approval or, at a minimum, condonation of off-premises solicitation. A similar incentive was given when claimant assisted [a local] theater group outside the bank, confirming her belief that the acquistion [sic] of new accounts away from the bank was not frowned upon.

"Upper management has indicated that it did not expect tellers to leave the bank to solicit business for very compelling business reasons primarily related to wage and hour regulations. The crux of the problem here, however, is that management's expectations were not sufficiently communicated to all levels of personnel. There is nothing in this record to indicate that claimant was ever instructed not to seek business off the premises. Rather, an atmosphere was created in which it could have been reasonably expected that claimant might resort to outside solicitation to protect her job.

"Considering all of the factors governing determination of whether an injury is work-related, I conclude that there is a significant work-connection between claimant's attendance at the rodeo meeting and subsequent departure."

As can be seen, the Board considered the benefit to the employer, whether claimant was on a personal mission, and the remuneration for the activity. It also discussed whether the activity was contemplated by employer and whether the activity was directed by or acquiesced in by employer. The Board concluded that claimant's attendance at the meeting, although not specifically required or authorized, was not beyond the type of off-premises activity contemplated

by employer, and that employer's conduct in rewarding claimant for her efforts after she had attended the meeting indicated an encouragement of and acquiescence in the conduct. We hold that the Board did properly analyze whether, under the totality of the circumstances, claimant was in the course of her employment when the injury occurred.

Employer also contends that the Board did not adequately consider the "arising out of" element of the work-connection test. We agree that the Board did not specifically draw a conclusion that the injury "arose out of" claimant's employment. However, it did make findings regarding the causal connection between claimant's employment and the injury. As we will discuss, those findings clearly support the conclusion that the injury did arise out of her employment. Accordingly, we do not believe that a remand is necessary in this case.

Employer first asserts that the injury on the sidewalk outside the evening rodeo meeting was not causally connected to a risk of claimant's employment, because claimant was a certified bank teller whose duties were confined to the work day at the bank, and she was not authorized to conduct sales activities after work or outside the bank premises. That argument, however, is based on employer's view of the facts, which the Board rejected. As noted, the Board found, and the evidence supports the finding, that after-hours, off-premises sales activities were encouraged and rewarded by employer. Therefore, employer's reliance on its view that claimant's duties were confined to the bank premises during banking hours is unavailing.

Employer also argues that, even if claimant's job included sales and community service activities after bank hours and off bank premises, there was no causal link between those activities and claimant's sidewalk injury. According to employer, there can be no causal connection where "[t]he record does not show any risk peculiar to claimant's employment that was not experienced by the traveling members of the general public." Employer misstates the law pertaining to the compensability of street injuries.[3] A rule

---

[3] Employer erroneously relies on the standard for establishing an exception to the "going and coming" rule. *See Kiewit Pacific v. Ennis*, 119 Or App 123, 126, 849

that requires an employee to prove a risk peculiar to the particular employment, to establish a causal connection between a street injury and employment, is "primitive and almost obsolete." *See* Arthur Larson, 1 *Workmen's Compensation Law* § 9.20 at 3-64 (1994) (footnote omitted). According to Larson, the majority rule in street and highway injury cases is the "actual-risk" test, under which an injury arises out of the employment "if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently." Larson, 1 *Workmen's Compensation Law* § 9.10 at 3-63; § 9.40 at 3-70 to 3-73.

In this case, the Board found that claimant's off-premises activity, although not specifically required or authorized, was not beyond the type of business solicitation contemplated by employer. The Board also found that employer's conduct in rewarding claimant for her efforts was an act of condonation, if not approval, of the off-premises activity. Those findings support the conclusion that, however infrequent, claimant's employment subjected her to the hazards of the street. Accordingly, the Board's findings lead to the conclusion that complaint's injury arose out of her employment.

■ In summary, we hold that the Board did not err in holding that claimant's injury arose out of and in the course of employment and, therefore, was compensable.

Affirmed.

---

P2d 541 (1993). The "going and coming" rule, and its exceptions, are relevant to the "in the course of" prong of the inquiry, but they do not resolve the issue of whether the injury "arose out of" the claimant's employment. *Norpac Foods*, 318 Or at 368.