Argued and submitted December 4, 1995, affirmed July 3, 1996

In the Matter of the Compensation of
Darron A. Arnold, Claimant.

FREIGHTLINER CORPORATION,
*Petitioner,*

*v.*

Darron A. ARNOLD,
*Respondent.*

(93-04313; CA A86953)

919 P2d 1192

Deborah L. Sather argued the cause for petitioner. With her on the briefs were Tracy J. White and Stoel Rives Boley Jones & Grey.

John F. Hogan argued the cause for respondent. On the brief was Donald M. Hooton.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Employer seeks review of an order of the Workers' Compensation Board (Board) holding that claimant's workers' compensation claim is compensable. We affirm.

The Board found the following facts. Claimant worked for employer, a truck cab manufacturer, as a painter's helper. His job required regular use of sprayed acid primer and other organic compounds that are capable of causing respiratory irritation. Claimant and other workers did not regularly use respiratory protective equipment while spraying primers in the open work area, which had fresh air ventilation. Claimant's job also required him to work in close proximity to an enclosed paint booth. He had access to the interior of the booth but was neither trained nor authorized to use it, nor had he been fitted for a fresh air supply mask to be used while inside the booth.

On March 15, 1993, claimant brought a helmet to work. During his shift, he sanded the helmet and prepared it for painting. Employer had a practice of allowing employees to complete personal work during work hours if the nature of the personal work was of the type the employees typically performed on the job and a policy of requiring a work order to do this. Claimant and his supervisor, Allen, spoke briefly about the helmet while claimant was sanding it during a break. Allen told claimant to hurry up and to do the work on claimant's own time. Between that break and the lunch break that followed, claimant painted the helmet with acid primer. While doing so, claimant did not wear a respirator. In the course of spraying the primer, claimant shot a burst of primer that surrounded him with a cloud of spray exceeding by four times his normal exposure to acid spray.

Claimant then obtained permission from a coworker to use the paint booth and related equipment to finish painting the helmet. He used the coworker's equipment, including the coworker's respirator, which did not fit well, and he completed the painting on his next break. He returned to his regular work and completed painting one or two more truck cabs before leaving.

On the way home, claimant began experiencing chills. Other symptoms developed during the night. The next day, he sought medical treatment. His physician authorized modified work without exposure to hydrocarbon fumes. Employer denied his claim for workers' compensation benefits.

The Board set aside the denial. The Board concluded that claimant had established that his occupational disease claim arose out of and in the course of his employment and that his work-related exposures were the major contributing cause of his respiratory condition. In evaluating whether the claim arose out of and in the course of employment, the Board cited the unitary work-connection test articulated by the Supreme Court in *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994), but it also discussed the facts in the light of the seven factors we listed in *Mellis v. McEwen, Hanna, Gisvold*, 74 Or App 571, 574, 703 P2d 255, *rev den* 300 Or 249 (1985). The Board found that claimant's activities in sanding, priming and painting his own motorcycle helmet did not benefit employer and that claimant had failed to obtain employer's permission to work on his helmet with employer's equipment. Nevertheless, the Board also found that employer had acquiesced in claimant's use of employer's equipment to sand and prime the helmet and that the use of employer's equipment for personal projects was typically allowed with permission during regular work hours. It further found that claimant's exposure to various irritating gases was an ordinary risk of his work with sanding and priming equipment and that some exposure to paint spray from the painting booth also was a risk associated with his work. The Board also found, however, that the same could not be said of claimant's own use of the painting equipment, which was not an ordinary part of his job. The Board finally noted that claimant's activities took place on employer's premises and were paid for by employer. The Board then concluded as follows:

"Considering all the above factors, without any one factor being dispositive, we are persuaded that claimant's activities in sanding and priming his helmet did arise out of his employment. We note in particular that although

claimant's work on his helmet was a personal mission, we conclude that the employer acquiesced in its employees' activities on personal projects, at least to the extent that those activities were part of the employee's regular duties[.]"

As to medical causation, the Board found that the testimony of employer's own physician, Dr. Montanaro, established that claimant's work-related exposures were the major contributing cause of claimant's need for medical treatment. The Board acknowledged that Montanaro used the term "material" cause in his opinion. Nevertheless, it concluded that, because Montanaro had identified no other causes of claimant's need for treatment, it is clear that the gravamen of his testimony was that the "major" contributing cause of the need for treatment was claimant's work-related exposure.

■ On review, employer first assigns error to the Board's conclusion that claimant's occupational disease arose out of and in the course of employment. Employer argues that the Board applied the wrong legal standard when it evaluated the facts in the light of the seven factors described in our opinion in *Mellis*. According to employer, the exclusive test for determining whether a claim arises out of and in the course of employment is the unitary work-connection test the Supreme Court set forth in *Norpac Foods*. Claimant argues that it was not reversible error to have applied the analysis described in *Mellis*. We agree with claimant.

For an injury or occupational disease to be compensable, it must "aris[e] out of and in the course of employment * * *." ORS 656.005(7)(a). In *Mellis*, we held that, in determining whether an injury or disease satisfies those statutory requirements, courts should consider seven factors: (1) whether the employment activity was for the benefit of the employer; (2) whether the activity was contemplated by the employer and the employee; (3) whether the activity was an ordinary risk of, and incidental to, employment; (4) whether the employer paid for the activity; (5) whether the activity occurred on the employer's premises; (6) whether the activity was directed by or acquiesced in by the employer; and (7) whether the employee was on a personal mission. *Mellis*, 74 Or App at 574.

In *Norpac Foods*, the Supreme Court explained that ORS 656.005(7)(a) creates a "unitary approach," in which the "arising out of" and "in the course of" references are but two components of a single inquiry:

> "Each element of the inquiry tests the work-connection of the injury in a different manner. The requirement that the injury occur 'in the course of employment' concerns the time, place, and circumstances of the injury. The requirement that the injury 'arise out of' the employment tests the causal connection between the injury and the employment. In assessing the compensability of an injury, we must evaluate the work-connection of both elements; neither is dispositive."

*Norpac Foods*, 318 Or at 366 (citations omitted). The court did not address whether the seven-factor analysis we described in *Mellis* continues to be a valid approach in evaluating the work-connection issue.

We addressed that issue in *First Interstate Bank v. Clark*, 133 Or App 712, 894 P2d 499, *rev den* 321 Or 429 (1995). In that case, the Board analyzed the issue of work connection in terms of the *Mellis* factors. We held:

> "The analytical framework set out in *Norpac Foods* does not significantly change the nature of our inquiry * * *; it essentially incorporates the tests for work-connection that have been established through case law. However, we believe that reliance on the *Mellis* test, as *the* test of work-connection, is inconsistent with the *Norpac Foods* framework, because the *Mellis* test does not necessarily allow a meaningful consideration of each of the two elements of the inquiry. Strict adherence to the seven-factor test also does not allow consideration of the totality of the circumstances, as required by *Norpac Foods*. Accordingly, we conclude that the factors identified in *Mellis* should no longer be used as an independent and dispositive test of work-connection. Nonetheless, depending on the circumstances, some or all of those factors will remain helpful inquiries under the *Norpac Foods* two-prong analysis."

*Clark*, 133 Or App at 717 (emphasis in original). We evaluated the Board's decision in that light and concluded that, although it had framed its analysis under the seven *Mellis* factors, the Board had adequately addressed the inquiries

required under the unitary work-connection analysis of *Norpac Foods. Clark*, 133 Or App at 717-20. In other words, although *Mellis* no longer correctly frames the analysis for evaluating the issue of work connection, it is not necessarily error for the Board to have relied on the seven *Mellis* factors in reaching a decision on the issue. The determinative question is whether the Board's work-connection analysis—by reference to seven factors or otherwise—adequately addresses both the "arising out of" and the "in the course of" components of the unitary work-connection test. With that in mind, we turn to the Board's decision in this case.

We conclude that, as in *Clark*, although the Board applied the seven-factor *Mellis* analysis, its decision nevertheless adequately addressed both components of the unitary analysis required in *Norpac Foods*. As to the "arising out of" component, the Board found that the risks associated with claimant's employment included exposure to irritating vapors from sanding and priming work. The Board further found that claimant's occupational disease was caused in major part by his exposure to those vapors. As to the "in the course of" component, the Board found that the activities that caused claimant's occupational disease occurred on employer's premises, were paid for by employer and occurred with employer's acquiescence. In reaching the conclusion that claimant's occupational disease arose out of and in the course of his employment, the Board clearly considered the totality of the circumstances; it cited *Norpac Foods* and expressly evaluated all relevant factors, without giving any one dispositive weight. *Norpac Foods* requires no more than that.

■       Employer insists that, even if the Board did not commit reversible error in referring to the seven *Mellis* factors, it erred in finding that claimant had acted within the boundaries of his employment and that employer had acquiesced in claimant's use of its sanding and priming equipment for a personal project. After carefully reviewing the record as a whole, we conclude that substantial evidence supports the Board's findings.

■■       In its second assignment of error, employer argues that the Board erred in relying on the opinion of Montanaro, because he testified only that claimant's need for treatment

was caused in "material" part by his work activities. Claimant argues that the Board was not precluded from relying on the opinion of Montanaro merely because his opinion did not include the words "major contributing cause." Again, we agree with claimant. An expert's testimony need not be ignored merely because it fails to include "magic words" such as "major contributing cause." *McClendon v. Nabisco Brands, Inc.*, 77 Or App 412, 417, 713 P2d 647 (1986). In this case, despite the fact that Montanaro used the term "material" in reference to causation, his testimony as a whole reasonably may be read as concluding that the "major" cause of claimant's need for treatment was his occupational exposure.

In its final assignment of error, employer argues that the Board's finding that claimant's occupational exposure was the major contributing cause of his need for treatment is not supported by substantial evidence. We reject that argument without further discussion.

Affirmed.