Argued and submitted May 8, affirmed September 2, 1998

In the Matter of the Compensation of
Hillard J. Fortson, Claimant.

SAIF CORPORATION
and Pope & Talbot, Inc.,
*Petitioners,*

*v.*

Hillard J. FORTSON,
*Respondent.*

(96-01843; CA A99413)

964 P2d 293

Michael O. Whitty argued the cause and filed the brief for petitioners.

James Edmunson argued the cause for respondent. With him on the brief was Cole, Cary & Wing.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warden, Senior Judge.

ARMSTRONG, J.

Warden, S. J., dissenting.

## ARMSTRONG, J.

SAIF seeks review of an order of the Workers' Compensation Board in which the Board found that claimant's injury arose out of and in the course of claimant's employment and, therefore, was compensable. We review for errors of law, ORS 183.482(8)(a), and affirm.

The relevant facts are undisputed. Claimant is a long-term production and maintenance worker at employer's paper production facility. At the time of his injury, claimant's working title was power and recovery lead operator and his principal duty was to keep equipment running properly in the recovery boiler area. In addition to his regular duties, claimant was occasionally given extra work assignments. It was unusually cold on February 1, 1996, and claimant was called in to help maintain free-standing, diesel- fueled heaters that were being used to prevent pipes at various locations at the plant from freezing. Claimant's job was to keep the heaters fueled and running. Heater work involved making the rounds of the plant facility, going to each location, fueling the heaters, checking their operation and correcting any problems with them. The task required two rounds, each of which would take approximately two hours. Claimant's shift began at 6:30 p.m. and was to run until some time between 4:00 and 6:00 a.m. Claimant was not expected to perform any tasks other than heater maintenance.

Although claimant arrived for work at 6:30 p.m., the fuel truck for the heaters was in use, and claimant and his coworker were not expected to have any task to perform until the truck became available at 8:00 p.m. Claimant initially decided to stay in the plant control room area, but, after a while, he decided to check on a beechwood crate that he had seen lying in the plant's main yard the day before. Claimant had salvaged similar crates before and wanted to take this one so that he could use the wood at home. Employer had a policy that allowed employees to take waste materials for their own use, provided that they first obtained permission from employer and a pass to remove the salvaged material from the plant grounds. Although employer expected personal salvage work to be done when employees were off the

clock, there was no written policy as to when and how that work should be done. Additionally, employer allowed employees to identify and locate salvageable materials while on the clock, as long as they did not leave an area to which they had been assigned or interrupt their work activities to do it. Claimant had submitted a salvage request and, after checking with his supervisor to make sure that the request had been granted and the pass issued, he set out to locate the crate. It was no longer in the yard where claimant had first seen it, so claimant went to check the dumpster, which was a significant distance from the control room where he originally had gone to await the arrival of the fuel truck, to see if the crate had been discarded. He climbed the ladder attached to the dumpster and, after reaching the top rung, slipped and fell, fracturing both of his arms.

As insurer for employer, SAIF denied claimant's claim for compensation on the ground that he "was not in the course and scope of [his] employment at the time of the alleged injury." Claimant requested a hearing, after which the administrative law judge (ALJ) upheld SAIF's denial, concluding that "claimant's February 1, 1996, injuries did not occur within the course and scope of his employment." On review, the Board reversed, concluding that

> "[i]n this case, claimant was on paid time when he was injured. The injury occurred on the employer's premises. Because claimant had no work responsibility (other than to be available in the event of heater malfunction) at the [time] of the injury, he did not 'depart' from work duty to investigate the contents of the dumpster. Instead, because the dumpster was in sight of the heater area, claimant was available to perform his work duties while he looked for the crate * * *.

> "In addition we find that claimant and employer generally contemplated that employees would look for salvage materials while working, so long as such activity did not interfere with work. We also find that employer knew claimant was doing that on February 1, 1996, because claimant informed his supervisor that he was going to look for the crate before he climbed the dumpster ladder. We further note the employer's course of conduct in allowing employees to identify discarded materials on paid time. Finally, because employer-discarded materials would

reasonably be expected to reach a trash receptacle before leaving the premises, we conclude that the employer actively acquiesced in, if not outwardly condoned, claimant's *investigation of the dumpster for the purpose of locating the previously identified discarded crate*."

The Board went on to note that the fact that claimant's activity conferred no benefit on employer did not change its conclusion that his injuries were work related.

■ SAIF does not dispute that claimant's injuries occurred in the course of his employment but contends that the Board erred in concluding that those injuries were compensable, because claimant was injured while on a purely personal errand that was of no benefit to employer and that presented no risk that could be related to his work. Hence, SAIF argues, the injuries did not arise out of claimant's employment. We disagree.

■ The Oregon Supreme Court recently has clarified the test to be applied when seeking to determine whether an injury is sufficiently work related to be compensable:

> "For an injury to be compensable under the workers' compensation law, it must 'aris[e] out of' and occur 'in the course of employment.' ORS 656.005(7)(a). The 'arise out of' prong of the compensability test requires that a causal link exist between the worker's injury and his or her employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996); *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The requirement that the injury occur 'in the course of' the employment concerns the time, place, and circumstances of the injury. *Krushwitz*, 323 Or at 526; *Norpac*, 318 Or at 366.

> "This court views the two prongs as two parts of a single 'work-connection' inquiry, that is, whether the relationship between the injury and the employment is sufficient that the injury should be compensable. *Krushwitz*, 323 Or at 526; *Norpac*, 318 Or at 366. *See* ORS 656.012(1)(c) (Legislative Assembly finds that 'those injuries that bear a sufficient relationship to employment * * * merit incorporation of their costs into the stream of commerce.'). Both prongs of the work-connection test must be satisfied to some degree; neither is dispositive. *Krushwitz*, 323 Or at 531; *Norpac*, 318 Or at 366. The work-connection test may be satisfied if

the factors supporting one prong of the statutory test are minimal while the factors supporting the other prong are many. *Krushwitz*, 323 [325 Or at 597] Or at 531 (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983)). Both prongs serve as analytical tools for determining whether, in the light of the policy for which that determination is to be made, the causal connection between the injury and the employment is sufficient to warrant compensation. *Andrews v. Tektronix, Inc.*, 323 Or 154, 161-62, 915 P2d 972 (1996)."

*Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596-97 943 P2d 197 (1997) (footnotes omitted). The determination about whether an injury is work related is to be made in light of the policy embodied in the workers' compensation system to protect workers from financial hardship due to injuries incurred in production, regardless of fault. *Andrews*, 323 Or at 162 n 2. Thus, the ultimate test is:

"Considering all the pertinent circumstances, are the temporal, spatial, circumstantial and causal connections between the claimant's injury and employment sufficient to justify compensation, when sufficiency is evaluated in the light of the Act's policy of providing financial protection to workers who are injured in the course of employment, regardless of fault?"

*Id.* at 162.

■ SAIF argues that the test also must include an evaluation of the risk of injury to claimant and contends that, because claimant's work did not involve the dumpster and because the dumpster itself posed, at best, a neutral risk, the risk of injury did not result from the nature of claimant's work or originate from some risk to which the work environment exposed claimant. SAIF overemphasizes the importance of the risk analysis. While it is true that past decisions of this court and the Supreme Court have included such a risk analysis, that analysis is not dispositive. *See, e.g., Phil A. Livesley Co. v. Russ*, 296 Or 25, 31, 672 P2d 337 (1983) ("while risk and causation are important factors in a work-connection analysis, they are but two of many factors, and even when risk and causation are weak, compensation is not

automatically foreclosed"). Rather, it is the totality of the circumstances surrounding the injury that determines compensability.

■     In this case, there is no dispute that claimant's injuries occurred in the course of his employment. Thus, the first prong of the unitary test is satisfied. As for the second prong, there is no dispute that employer's policy was to allow employees to locate and identify salvageable materials while working, as long as the employee did not depart from his or her duties to do so.[1] Furthermore, there is no dispute that, at the time of his injuries, claimant was not departing from any duty—he had some free time while he waited for the fuel truck to arrive, and he decided to spend it looking for the crate rather than sitting in the control room. In light of employer's policy, we conclude that the activity was contemplated by both employer and claimant and that the activity was acquiesced to by employer.

The fact that claimant's activity conferred no benefit on employer is not determinative. We have in the past considered the benefit to the employer of the conduct that injured the claimant when evaluating whether the injury was connected with work. *See, e.g., Mellis v. McEwen, Hanna, Gisvold,* 74 Or App 571, 574, 703 P2d 255 (1985). However, in *First Interstate Bank v. Clark,* 133 Or App 712, 717, 894 P2d 499 (1995), we specifically rejected a mechanical application of factors such as that, on the ground that such an application does not permit meaningful consideration of the circumstances of the injury in their totality, as required by *Norpac* and its progeny. Although it is true that some of the factors identified in *Mellis* remain helpful under *Norpac* in evaluating the connection between work and an injury, *see id.,* the benefit to the employer of a claimant's activity at the time of injury has not been a dispositive factor in any recent case. Indeed, recent decisions by the Supreme Court have rarely dealt with that factor at all. One need look no further than

---

[1] SAIF argues that the Board's conclusion that employer allowed employees to locate and identify salvageable materials while working is inconsistent with its finding that employer expected employees to remove those materials on their own time. We disagree. The act of locating or identifying materials is separate from the act of removing those materials. The Board clearly distinguished between those activities and, therefore, its findings and conclusion are not inconsistent.

the decisions involving "horseplay" to see that injuries that result from activities that are of little or no benefit to an employer can be compensable under the totality of the circumstances. *Cf. Kammerer v. United Parcel Service*, 136 Or App 200, 204, 901 P2d 860 (1995) (discussing principles underlying compensation for certain injuries received as result of horseplay).[2]

Affirmed.

**WARDEN, S. J.,** dissenting.

The majority affirms the order of the Workers' Compensation Board which found that claimant's injury arose out of and in the course of his employment and concluded that it was, therefore, compensable. In doing so, the Board reversed the finding and conclusion of the administrative law judge. Because the decision of the administrative law judge was the correct one, I dissent.

The facts are sufficiently set forth in the majority opinion; I differ with the majority as to whether those facts establish that claimant's injury was one "arising out of and in the course of employment." ORS 656.005(7)(a). I would conclude that they do not.

To establish compensability, the claimant had to establish that the injury resulted from his job. As the Supreme Court said in *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 368-69, 867 P2d 1373 (1994):

"A claimant must also establish a causal connection between the injury and the employment, which is the second element of our unitary work-connection inquiry, namely, whether the injury 'arose out of' the employment. It is well-established that an 'employer * * * is not liable for any and all injuries to its employe[es] irrespective of their cause, and the fact that an employe[e] is injured on the premises during working hours does not of itself establish a compensable injury. The employe[e] must show a causal

---

[2] One might posit that "horseplay" benefits an employer by boosting employee morale, in which case the same could be said for the activity at issue in this case. By allowing employees to salvage materials, employer boosts morale and receives the benefit of worker loyalty.

link between the occurrence of the injury and a risk connected with his or her employment.' *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29, 672 P2d 337 (1983)."

More recently, the Supreme Court has articulated the proper test for determining whether an injury is one "arising out of" employment, *i.e.*, whether there is a causal connection between the employment and the injury, as: "whether the risk of claimant's injury either resulted from the nature of his work or whether the work environment exposed him to the risk of his injury." *Redman Industries, Inc. v. Lang*, 326 Or 32, 36, 943 P2d 208 (1997). Here, there is no causal connection between claimant's injury and the nature of his *work* and nothing in his *work* environment that exposed him to the risk of his injury. At the time of his injury, claimant was engaged in pursuing his personal woodworking hobby, not his work or anything connected with his work.

The majority appears to rely on the facts that claimant's activity at the time of his injury was contemplated by and acquiesced in by the employer. That reliance would be "make weight," if that could be said for it. Neither fact goes to causation, but to employer's willingness to make available to employees material for which employer had no use and no wish to retain ("freebies," if you wish) and to protect employees from any charge of theft in taking such materials. That they establish any risk from the nature of claimant's *work* or his *work* environment resulting in his injury is a quantum leap of sophistry that even lawyers should reject.

The administrative law judge was correct in his finding and conclusion, and I would reverse the Board and reinstate the order of the administrative law judge. Therefore, I dissent.