Argued and submitted June 26, 2012, reversed and remanded June 12, 2013

In the Matter of the Compensation of
Elena Mendoza, Claimant.

Elena MENDOZA,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Dameron Property Management,
*Respondents.*

Workers' Compensation Board
1003257; A149463

304 P3d 776

Julene M. Quinn argued the cause for petitioner. With her on the briefs was Kryger Alexander Carlson PC.

David O. Wilson argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Claimant seeks judicial review of an order of the Workers' Compensation Board (the board) concluding that her injuries, which occurred while she was driving to employer's office to pick up paychecks to distribute to fellow employees, did not occur in the course of her employment and were therefore not compensable. On review for errors of law, ORS 183.482(8)(a), we conclude that, under the facts established by the board, claimant's injuries occurred in the course of her employment. Accordingly, we reverse and remand.

Neither party challenges the board's factual findings, which we summarize as follows. Employer provides cleaning services for department stores in seven states. At the time of her injuries, claimant worked for employer as a "team leader" and, in that capacity, led a three-person crew assigned to clean a particular store near Portland. Claimant's crew was one of several in the Portland area; each was led by a team leader.

Team leaders, including claimant, were responsible for receiving paychecks from employer and distributing the paychecks to the members of their crews. The paychecks were delivered by an outside provider to employer's Tacoma, Washington, office on the third and twenty-third day of each month. Employer allowed local team leaders, including those from Portland, to travel to the Tacoma office, pick up paychecks for multiple crews, and then distribute them at prearranged sites; employer did not knowingly pay team leaders for any time that they spent doing so. Team leaders who wanted to pick up paychecks were required to call or arrive at the Tacoma office by 3:00 p.m. Otherwise, employer's office manager would mail the paychecks to the team leaders for distribution to their crew members. Six or seven of the Portland crews routinely sent one or more team leaders to the Tacoma office to pick up paychecks. Alternatively, a district manager sometimes drove the paychecks from the Tacoma office to the Portland area for distribution.

On December 3, 2008, claimant received a call at home from another team leader who explained that he could

no longer drive to Tacoma that day to pick up the paychecks as planned and asked if claimant could do so instead. Claimant agreed and arranged to drive to Tacoma with another employee in that employee's vehicle. While traveling to Tacoma, they were involved in a car accident, and claimant was injured.

Employer denied claimant's workers' compensation claim on the ground that her injuries did not arise out of or in the course of her employment. An administrative law judge upheld that denial, as did the board, which concluded that claimant's injuries did not occur in the course of her employment. The board did not consider whether claimant's injuries arose out of her employment. *See* ORS 656.005(7)(a) ("A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment[.]"). The board reasoned that claimant was "off work, not being paid, and was free to use her time as she wished" when the accident occurred. Although the board noted that "employer permitted team leaders to pick up the paychecks in person," it found that "claimant was neither required nor expected to pick up paychecks as a team leader" but that she did so "because she needed the money right away," and concluded that "claimant's activity provided no benefit to her employer."

On judicial review, claimant challenges the board's conclusion that her injuries did not occur in the course of her employment. Whether an injury occurs in the course of employment forms one prong of the two-pronged "unitary work-connection test," which we have summarized as follows:

> "A claimant bears the burden of establishing the compensability of his or her injury—and, specifically, the requisite connection between the injury and his or her employment. 'A compensable injury is an accidental injury * * * arising out of *and* in the course of employment.' ORS 656.005(7)(a) (emphasis added). That is, both conjunctive statutory elements must be met. In determining whether an injury occurs 'in the course of' employment, we look at the time, place, and circumstances of the injury. The 'arising out of' prong refers to the causal link—the causal nexus—between the injury and the employment. '[A] worker's injury is

deemed to arise out of employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker.' As noted, both prongs of the 'unitary work-connection test' must be met to some degree. Nevertheless, the test may be satisfied, even if the factors supporting one prong are weak, if those supporting the other are strong."

*Legacy Health Systems v. Noble*, 250 Or App 596, 600-01, 283 P3d 924, *rev den*, 353 Or 127 (2012) (ellipses and brackets in *Noble*; some citations and internal quotation marks omitted). Here, as noted, the board did not reach the "arising out of" prong. However, employer concedes that, under the facts of this case, if claimant's injuries occurred in the course of her employment, they also arose out of her employment. Accordingly, the only issue on review is whether claimant's injuries occurred in the course of her employment.

Whether an injury occurs "in the course of" employment concerns the time, place, and circumstances of the injury. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997). "An injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it." *Id.* at 598. "An activity need not be directed by an employer in order for it to be work-related." *SAIF v. Scardi*, 218 Or App 403, 411, 180 P3d 56, *rev den*, 345 Or 175 (2008). Nor is it required that an employer have compensated a claimant for participating in the activity. *See, e.g., Iliaifar v. SAIF*, 160 Or App 116, 981 P2d 353 (1999) (the claimant's injury occurred in the course of employment even though the claimant was off work and unpaid at the time of the injury); *First Interstate Bank v. Clark*, 133 Or App 712, 894 P2d 499, *rev den*, 321 Or 429 (1995) (same). Indeed, "[f]or many years, Oregon has recognized that injuries are work related that occur in the performance of duties even though the claimant is off the employer's premises and performing duties that are not directly connected with the profit-making function of the employer's business or that are not considered within the claimant's typical job duties." *Iliaifar*, 160 Or App at 122.

We conclude that claimant's injuries occurred in the course of her employment. Put simply, claimant was injured while performing a duty of her employment—namely, receiving paychecks from employer so that she could then distribute them to members of her crew. As noted, the board found that "claimant was neither required nor expected to pick up the paychecks" in person and that employer merely "permitted" that method of receiving the paychecks. However, it is immaterial that claimant was not required to travel to the Tacoma office in order to receive the paychecks. She *was* required, as a team leader, to receive and distribute the paychecks to the members of her crew. Employer provided local team leaders with two means of fulfilling that obligation: they could either (1) travel to the Tacoma office to pick up the paychecks or (2) wait for the paychecks to be delivered or mailed. Indeed, as the board found, although employer did not require or expect team leaders to pick up the paychecks at the Tacoma office, employer coordinated that activity by establishing rules governing when and how team leaders could do so. Moreover, the fact that claimant was motivated by a desire to receive her own paycheck sooner does not mean that her conduct was not connected with work. *Cf. Clark*, 133 Or App at 715-16 ("[T]he fact that an activity is directed at keeping one's job does not, in itself, make the activity a personal mission."). Accordingly, claimant's trip to the Tacoma office was an off-premises work activity that was contemplated (and coordinated) by employer. *See id.* at 718-19 (the claimant's injury, which she suffered while voluntarily attending an off-premises meeting to solicit business and perform community service, occurred in the course of employment because the activity was "the type of off-premises activity contemplated by [the] employer," who "acquiesce[d] in the conduct").

Employer argues, in part, that the board correctly concluded that claimant's trip to the Tacoma office did not benefit employer. *See SAIF v. Fortson*, 155 Or App 586, 592, 964 P2d 293 (1998) (explaining that "[w]e have in the past considered the benefit to the employer of the conduct that injured the claimant when evaluating whether the injury was connected with work" but adding that that determination is not dispositive). As an initial matter, we note that the

board's conclusion that the activity did not benefit employer is a legal conclusion that, taking the facts as found by the board, we review for errors of law. *Iliaifar*, 160 Or App at 123-24. Here, the board found that claimant's job duties as a team leader included receiving and distributing paychecks to the members of her crew, that employer allowed local team leaders to accomplish those tasks by first picking up the paychecks in person at the Tacoma office, and that, alternatively, "the district manager would sometimes drive the checks to the Portland area for distribution to the workers." However, the board also found that claimant preferred that the paychecks be picked up in person by a team leader "because she needed the money right away" and, on that basis, concluded that claimant's trip "provided no benefit to her employer."

We disagree. The activity at issue—picking up paychecks at the Tacoma office to distribute to fellow employees—provided a benefit to employer. It is the obligation of an employer to provide its employees with compensation when it is owed. Team leaders who traveled to the Tacoma office to pick up paychecks for distribution to fellow employees furthered that obligation. Moreover, if a team leader picked up the paychecks at the Tacoma office, employer did not have to undergo the expense of mailing those paychecks to team leaders or sending the district manager to deliver them to the Portland area. Finally, the activity benefited employer in the sense that its employees would be more satisfied if they received their paychecks earlier than if the checks were mailed. *See Fortson*, 155 Or App at 593 n 2 (suggesting that conduct that "boosts morale" and encourages "worker loyalty" may benefit an employer).

In sum, claimant's injuries occurred while she was performing a duty of her employment in a manner allowed by employer and for employer's benefit. Accordingly, her injuries occurred in the course of her employment.

Reversed and remanded.