Argued and submitted January 9, affirmed May 13, 2015

In the Matter of the Compensation of
Daniel L. DeMarco, Claimant.

SAIF CORPORATION
and TNT Management Resources,
*Petitioners,*

*v.*

Daniel L. DeMARCO,
*Respondent.*

Workers' Compensation Board
0806530; A155383

349 P3d 660

David L. Runner argued the cause and filed the briefs for petitioners.

James W. Moller argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

**FLYNN, J.**

SAIF Corporation and its insured, TNT Management Resources (collectively, SAIF), petition for review of an order of the Workers' Compensation Board that set aside SAIF's denial of claimant's new/omitted medical condition claims for left foot and lower extremity cellulitis, left foot necrotizing fasciitis and group A strep infection, and "below-the-knee" amputation of the left leg. SAIF assigns error to the board's conclusion that "the medical opinions upon which it relied were legally sufficient or otherwise adequate to prove major contributing cause under ORS 656.005(7)(a)(A)." We conclude that the board did not err, and affirm.

We summarize the administrative law judge's (ALJ) findings of fact, which the board adopted. On September 6, 2007, while working for employer and assigned to a glass company, claimant sustained a compensable injury when two glass shower doors landed on the top of his left foot. SAIF accepted the claim for closed left foot fracture, and abrasions and contusions to the left foot. Claimant's attending physician, orthopedic surgeon Dr. Ballard, also noted a "moderate to severe" amount of swelling. Throughout claimant's treatment with Ballard, claimant continued to have swelling in his left foot severe enough that Ballard prescribed larger sized work boots to accommodate the swelling. SAIF closed the claim on April 17, 2008.

On April 18, 2008, claimant went to the emergency room complaining of foot and leg swelling with redness, and a fever. He also had an area of "oozing" on the top of his foot at the site of the fracture. Claimant was diagnosed with cellulitis, and his condition in the hospital deteriorated rapidly. He was taken to the ICU with renal and respiratory failure, and sepsis of the leg. Claimant was diagnosed with necrotizing fasciitis and administered a tourniquet. The following day, Dr. VanDerHeyden performed a below-the-knee amputation. Lab tests revealed that the necrotizing fasciitis resulted from a group A streptococcal infection. Claimant filed new/omitted medical condition claims for the cellulitis, group A strep infection, necrotizing fasciitis, and the amputation. SAIF denied the claims, and claimant requested a hearing.

The record contains opinions from four of claimant's treating physicians, including Ballard and VanDerHeyden, as well as three physicians who performed record reviews, and from Dr. Puziss, who examined claimant and authored a report. Those opinions included an explanation that swelling causes reduced blood flow and therefore reduced immunological response that provides a good host environment for bacteria, creating essentially a "petri dish" for the infection. They explained that group A strep bacteria is ubiquitous and could have entered the body through any minor skin break some time after the work injury, but developed into an infection in the foot because of the swelling there.

Medical opinions differed as to whether claimant's left foot fracture caused the infection and eventual amputation of his left foot. Dr. Selinger and Dr. Rabinovitch, who conducted record reviews, as well as VanDerHeyden and Puziss, agreed that it was "extremely" or "extraordinarily" unlikely that claimant would have developed the infection that led to the amputation of his foot were it not for the chronic swelling associated with his left foot fracture. VanDerHeyden described the infection as "a secondary infection, *i.e.* complication of the original injury." Selinger and Rabinovitch, both infectious disease specialists, emphasized that the swelling impaired claimant's defenses and, thus, allowed the bacteria to thrive. Rabinovitch opined it was "highly likely that the infection occurred as a result of the original trauma."

Following a hearing, the ALJ found that claimant's evidence established the compensability of the conditions under either a material or major contributing cause standard, but concluded that the material contributing cause standard applied because the group A strep infection arose directly from the injury. The ALJ found that claimant met this standard and accordingly set aside the denials.

SAIF appealed to the board, arguing that claimant's claim should be analyzed as a consequential condition claim, subject to the major contributing cause standard, and that claimant failed to prove causation under that standard. The board agreed with SAIF that claimant's claim was for consequential conditions subject to the major contributing

cause standard. The board, nevertheless, agreed with the ALJ that the conditions were compensable, because it found claimant's "injury-related swelling, which resulted in reduced blood flow and compromised immune system defenses," to be the major contributing cause of claimant's strep infection, which was undisputedly the major contributing cause of the resulting cellulitis, necrotizing fasciitis, and amputation.

On review, SAIF contends that the medical opinions upon which the board relied were not "legally sufficient" to prove that claimant's compensable injury was the major contributing cause of the strep infection. SAIF argues, first, that the experts improperly considered the contribution from claimant's swelling, which SAIF argues is a "predisposition" or "susceptibility" and, therefore, "legally excluded from consideration." SAIF also argues that the medical opinions do not permit the board's causation finding, because they do not describe claimant's injury-related swelling as the "major contributing cause" of the strep infection and do not reflect the required weighing of injury-related factors against other causes.

As an initial matter, we reject SAIF's challenge to the sufficiency of the expert opinions. Although SAIF is correct that causation in this case was a complex medical question requiring proof by expert opinion and that an expert's determination of "major contributing cause" involves weighing the relative contribution of work-related versus nonwork-related causes, we have repeatedly said that there are no "magic words" required from experts. *See SAIF v. Durant*, 271 Or App 216, 220, 350 P3d 489 (2015); *see also SAIF v. Strubel*, 161 Or App 516, 521, 984 P2d 903 (1999) (medical opinion that did not explicitly weigh all contributing causes of injury established work was major cause of need for treatment when evaluated in context of record as a whole); *Freightliner Corp. v. Arnold*, 142 Or App 98, 105, 919 P2d 1192 (1996) (medical opinion explicitly addressed only material causation, but established that the claimant's occupational exposure was the major cause of his need for treatment); *McClendon v. Nabisco Brands, Inc.*, 77 Or App 412, 417, 713 P2d 647 (1986) (description of the claimant's

condition as "due to or aggravated by her occupation" and "occupational disease type involvement" established that work activities were the major contributing cause of the condition or its worsening). Rather, we allow the board to "draw reasonable inferences" about whether the expert is expressing a "major contributing cause" opinion and whether the expert engaged in the required weighing process for that opinion. *Durant*, 271 Or App 221 (quoting *Benz v. SAIF*, 170 Or App 22, 26, 11 P3d 698 (2000)). The board's analysis here makes clear that it interpreted several of the expert opinions in this record as describing a major contributing cause relationship between claimant's compensable injury and the strep infection, and as reflecting the required weighing of contributing causes. The evidence permits those inferences.

That leaves SAIF's primary argument—that claimant's foot swelling was a mere "predisposition" or "susceptibility" and "legally excluded from consideration" as a cause of claimant's infection-related conditions. In support of its conclusion, SAIF relies on *Murdoch v. SAIF*, 223 Or App 144, 149-50, 194 P3d 854 (2008), *rev den*, 346 Or 361 (2009), in which we held that the claimant's diabetes was a "mere susceptibility," which the board could not consider in weighing the causes of an infection, and ultimate toe amputation, that the claimant suffered after developing a blister from his work boots.

To explain why *Murdoch*'s "susceptibility" distinction has no bearing on the analysis here, we begin by explaining the distinct statutory frameworks governing compensability in the two cases. The issue in *Murdoch* was whether the claimant's infection was a compensable occupational disease under ORS 656.802(2). The statute governing proof of a compensable occupational disease specifically provides: "Preexisting conditions shall be deemed causes in determining major contributing cause under this section." ORS 656.802(2)(e). In *Murdoch*, we explained:

> "[I]n order to receive workers' compensation for medical treatment of a disease, a worker 'must prove that employment conditions were the major contributing cause' of the need for that treatment. ORS 656.802(2)(a). Thus, if the major contributing cause is a preexisting condition

*that is not related to employment,* the treatment is not compensable."

223 Or App at 146 (emphasis added). Thus, our decision in *Murdoch* focused on ORS 656.005(24), which supplies the definition of a "preexisting condition," and specifically paragraph (c), which provides:

"For the purposes of industrial injury claims, a condition does not contribute to disability or need for treatment if the condition merely renders the worker more susceptible to the injury."

The "preexisting condition" definition has no bearing on this case, however, because the issue here is whether claimant's infection and amputation are compensable "consequential conditions." That determination is governed by ORS 656.005(7)(a)(A), which provides:

"No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

Thus, in determining whether claimant's infection-related conditions were a compensable "consequential condition," the board was required to consider the contribution from claimant's "compensable injury," which—as the board found—included soft tissue swelling. We reject SAIF's suggestion that the board could evaluate the contribution of claimant's compensable injury without considering the contribution of a part of that injury. We agree with the board's succinct response to SAIF's argument:

"[T]he conclusion that a compensable injury is not a 'cause' because it 'render[s] the worker more susceptible' to the consequential condition is not consistent with the statutory framework, which requires the compensable injury to be weighed in determining the major contributing cause of the consequential condition."

The board's finding that swelling—a part of the compensable injury—was the major contributing cause of claimant's infection-related conditions means the conditions are compensable as a consequence of his compensable injury. ORS 656.005(7)(a)(A).

Affirmed.